# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

Appeal No.: 21-13469-GG

LT Case No.: 0:20-cv-60666-AHS

**JESSICA GRAVES,**

 Appellant,

v.

**BRANDSTAR STUDIOS, INC.,**

 Appellee.

_____

## APPEAL FROM THE DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

---

## APPELLANT'S INITIAL BRIEF

---

*G. Ware Cornell, Jr.*

Fla. Bar No.: 203920

ware@warecornell.com

**CORNELL & ASSOCIATES, P.A.**

*Attorney for Appellant*

2645 Executive Park Drive

Weston, Fla. 33331

Tel: (954) 618-1041

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Appellant Jessica Graves, certifies, in accordance with Federal Rules of

Appellate Procedure and the accompanying circuit rules, that the following persons

and corporate entities may have an interest in the outcome of this action:

### Interested Persons & Corporate Entities

1. Alfieri, Mark, CEO of Appellee

2. Brandstar Studios, Inc., Appellee

3. Cornell & Associates, P.A., Counsel for Appellant

4. Cornell, Jr., G. Ware, Counsel for Appellant

5. Graves, Jessica, Appellant

6. Richard D. Tuschman, P.A., Counsel for Appellee

7. Tuschman, Richard D., Counsel for Appellee

8. Singhal, Hon. Raag, United States District Judge

## STATEMENT REGARDING ORAL ARGUMENT

Appellant, Jessica Graves, requests oral argument to assist the Court in understanding why the district court erred in granting summary judgment on the Family and Medical Leave Act claim and the Americans with Disabilities Act claim for associational discrimination.

# TABLE OF CONTENTS

**PAGE**

Certificate of Interested Persons and Corporate Disclosure Statement…..………...2

Statement Regarding Oral Argument……………………………………………....3

Table of Contents…………………………………………………………………...4

Table of Citations…………………………………………………………….....5-6

Jurisdictional Statement………………………………………………………………7

Statement of the Issues on Appeal……………………………………………………8

Statement of the Case………………………………………………………………9

      i.     Court of Proceedings and Disposition Below……………………..9-10

      ii.    Statement of Facts…………………………………………………..10-12

      iii.   Standard of Review…………………………………………………12

Summary of Argument………………………………………………………………13

Argument…………………………………………………………………………14

      I.     The District Court misapplied the FMLA………………………14-20

      II.    The District Court erred in the consideration
            of the ADA claim………………………………………………...20-22

      III.   The District Court misapplied the provisions of the Americans with
            Disabilities Act relating to associational discrimination………...22-24

Conclusion……………………………………………………………………...24

Certificate of Compliance……………………………………………………………25

Certificate of Service………………………………………………………………...25

# TABLE OF CITATIONS

**PAGE**

## CASES

*Crawford v. City of Tampa*
    8:08-CV-927-T-26EAJ, 2011 WL 940305, at *3………………………….20

*Hartog v. Wasatch Academy*
    129 F.3d 1076, 1085 (10th Cir.1997)…………………………………….21

*Hilburn v. Murata Elecs. N. Am., Inc.*
    181 F.3d 1220, 1230–31 (11th Cir. 1999)…………………………….21

*Holifield v. Reno*
    115 F.3d 1555, 1562 (11th Cir.1997)……………………………………21

*In Re Johannessen*
    76 F.3d 347, 349 (11th Cir. 1996)………………………………………12

*James v. N.Y. Racing Ass'n*
    233 F.3d 149, 157 (2d Cir.2000)………………………………………...22

*Matamoros v. Broward Sheriff's Office*
    2 F.4th 1329 (11th Cir. 2021)……………………………………………13

*McDonnell Douglas Corp. v. Green*
    411 U.S. 792 (1973)………………………………………………20-21

*Munoz v. Selig Enterprises, Inc.*
    981 F.3d 1265, 1276–77 (11th Cir. 2020)…………………………….18

*Ramji v. Hospital Housekeeping Sys. LLC*
    992 F.3d 1233 (11th Cir. 2021)……………………………...9, 16, 17

*Silverman v. Bd. of Educ.*
    637 F.3d 729, 733 (7th Cir.2011)……………………………………..22

*Smith v. Lockheed-Martin Corp.*
    644 F.3d 1321, 1328 (11th Cir 2011)………………………………….22

*Strickland v. Water Works & Sewer Bd. of Birmingham*
239 F.3d 1199, 1209 (11th Cir. 2001)…………………………………...18

*Tolan v. Cotton*
134 S.Ct. 1861 (2014)……………………………………………13, 22-24

*White v. Beltram Edge Tool Supply, Inc.*
789 F.3d 1188(11th Cir. 2015)…………………………………………15, 18

## COURT RULES

Rule 56 of the Federal Rules of Civil Procedure……………………………...13, 22

## REGULATIONS

29 C.F.R. § 825.300(b)(1)…………………………………………………..13-14

29 C.F.R. § 825.300(c)…………………………………………………...13-14

29 C.F.R. § 825.300(e)……………………………………………………14

29 C.F.R. § 825.303(a)……………………………………………………15

29 C.F.R. § 825.303(b)……………………………………………………15

29 C.F.R. § 825.300(c)……………………………………………………13

## STATUTES

Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12111–12117……….10, 13

Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601–2654 (2006)……….13

Florida Civil Rights Act of 1992, Fla. Stat. § 760.01……………………………..13

## JURISDICTIONAL STATEMENT

This is an appeal arising from a decision of a United States District Court that is within the jurisdiction of the Eleventh Circuit Court of Appeals. Jurisdiction of this Court is conferred by 28 U.S.C. §1291, granting jurisdiction to the Court of Appeals over final decisions of the district courts. The Final Judgment in favor of Defendant is a final decision within the contemplation of this section.

## STATEMENT OF THE ISSUES ON APPEAL

### I

Did the District Court misconstrue or misapply the provisions of the Family and Medical Leave Act by finding that the Appellant was not entitled to the provisions of the Family and Medical Leave Act relating to unforeseen medical leave when her father required emergency brain surgery?

### II

Did the District Court misconstrue or misapply the provisions of the Americans with Disabilities Act by failing to credit the inferences inherent in Appellant's plans to move her disabled father into her home in Florida from Pennsylvania?

### III

Did the District Court improperly weigh evidence and fail to follow controlling Supreme Court precedent?

## STATEMENT OF THE CASE

*Course of Proceedings and Disposition Below*

Jessica Graves, formerly a producer at Brandstar Studios, Inc., filed her Complaint against Appellee on March 30, 2020 {Doc. 1}. Following a substitution of the party defendant because of a corporate misnomer, an Amended Complaint was filed May 6, 2020 {Doc. 8} against Brandstar Studios, Inc. and was answered on May 20, 2020 {Doc. 11}.

Thereafter, the parties engaged in mutual discovery. After the close of discovery, Appellee moved for summary judgment {Doc. 21}. Appellant responded in opposition on January 11, 2021 {Doc. 25}. Appellee then replied on January 19, 2021 {Doc. 29}.

On April 7, 2021, Appellant filed a Notice of Supplemental Authority {Doc. 35} and sought leave to file additional briefing in view of the decision of this Court the previous day in *Ramji v. Hospital Housekeeping Sys., LLC*, 992 F.3d 1233 (11th Cir. 2021). The Appellee opposed the request for supplemental briefing {Doc. 37}, but, on July 6, 2021, the trial judge entered a paperless order granting Appellant's motion {Doc. 40}.

Thereafter, both parties briefed the applicability of *Ramji* {Doc. 42 & 43}.

Thereafter, the District Court granted summary judgment on September 17, 2021 {Doc. 44}. Final judgment was entered that same day {Doc. 45}.

On October 11, 2021, Appellant filed her timely Notice of Appeal {Doc. 48}.

## Statement of Facts

Jessica Graves was an employee who became FMLA eligible on January 9, 2018 and remained so until her termination on May 30, 2018. As an employee, during the whole course of her employment, she was protected under the Americans with Disabilities Act, which expressly prohibits "associational discrimination", which is to say discrimination against her on account of her relationship and existing and prospective obligations of care to a person with a disability.

The disabled person was her father who was "couch ridden" and under medical and nursing care in Pennsylvania.  As Graves recounted in her Declaration under Penalty of Perjury, filed in opposition to the Appellee's Motion for Summary Judgment:

> 3. I have been asked to describe his condition beginning in January, 2018, following one year of employment at Brandstar up until the time I was terminated in late May, 2018.
> 4. During this period of time my father lived in Pennsylvania where all his doctors were located.
> 5. He had a feeding tube and underwent chemotherapy and radiation on a regular basis. He had previously lost part of a lung. He was unable to lay on bed in the house and slept, as best he could, on a couch and the recliner chair. Due to his illness and treatment he lost a tremendous amount of weight.
> {Doc 25-2, pg. 1}

As a daughter, Graves was in fact his primary caregiver and devoted a significant amount of time each day to his physical and emotional care:

6. I was his primary caregiver, although like many caregivers in today's pandemic world I had to function remotely.

7. On any given day, I would speak to my father several times a day providing emotional support, speak with home health aides about issues or concerns that would arise on a daily basis, speak with doctors' offices to make appointments or go over clinical findings. Thus I would spend at least three hours per day on caring for my father, while being a mother for two children.

{Doc. 25-2, pg. 1}

Graves learned that her father required emergency surgery for a brain tumor on May 2, 2018. She immediately notified her management that she was traveling to Pennsylvania because of her father's need for emergency brain surgery, leaving the next day {Doc 25-2, pg. 1}.

Four days later, Graves sent an email to Mark Alfieri, Brandstar's Chief Executive Officer, pitching a show regarding the makeover of her garage to accommodate the needs of a disabled veteran - her father. Defendant's Statement of Material Facts {Doc. 22-2, pg. 49}.

From: Jessica Bianco[1]
Sent: Sunday, May 06, 2018 7:41 AM
To : Mark Alfieri <Mark@BrandStar.com>
Subject: My Dad

Hi Mark, l just got back from PA where my dad was having emergency brain surgery for a tumor. The aggressive throat cancer that he just finally recovered from last year has metastasized and formed two tumors in his brain. This recent surgery was only able to remove one. the other will need to be treated with radiation and intense chemo and soon.

My dad is a Vietnam Vet who was affected by Agent Orange: He spent his entire career working in the probation and parole system, since retiring he has

---

[1] Graves was previously known by the name of her ex-husband Bianco.

lived alone in Western PA. He's the kindest. strongest and most stubborn man I've ever known and he's my best friend.

Fortunately, I was able to convince him to let me find the best oncologists and radiologists in South Florida for this next and hopefully final round of treatment, but I will need to move him down here asap. Since the last treatment resulted in pneumonia which required a portion of his lung to be removed and feeding tube chest port to be put in. He nearly died twice.

The reason I'm telling you this is because I'm hoping you can help.

I have a 2-car garage that I need to convert into a studio apartment and I know that between Ryan/Russ/Edwin/Vince they could knock this out in a few days.

l am hoping you'll see the benefit in allowing them a few days to do this within the next couple weeks since we can also turn this into a local Military Makeover UFP. There are a few companies I can reach out to for materials to help, but l am prepared to pay for everything myself, including labor. All l need from you ls permission to 'borrow 'the guys.

I'm around if you want to give me a call otherwise we can discuss Monday. I'm going to be driving him and his beloved dog down to FL once he's released from rehab to begin treatments.

Thanks and talk soon, Jess 646. {Redacted}

Defendant's Statement of Material Facts {Doc. 22-2, pg. 48}

Twenty-four days later Graves was fired.

## *Standard of Review*

A district court's grant of summary judgment is reviewed <u>de novo</u>. *In Re Johannessen*, 76 F.3d 347, 349 (11th Cir. 1996).

## SUMMARY OF ARGUMENT

The district court erred in the consideration of Appellant's Family and Medical Leave Act[2] claim when it held her notification to her employer of the metastasis of her father's lung cancer to his brain, necessitating emergency brain surgery in early May, 2018 was foreseeable and that her claim failed because she had not given notice. It also erred when it excused the Appellee from the requirements of "eligibility" notice under 29 C.F.R. § 825.300(b)(1), and the "rights and responsibilities" notice under 29 C.F.R. § 825.300(c), which must be provided to the employee at the same time as the eligibility notice.

The decision of the court below of Appellant's claim under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111–12117 for "associational discrimination was likewise infused with error. However, the pendent state claim for associational discrimination under the Florida Civil Rights Act of 1992, §§ 760.01 et seq, Florida Statutes is withdrawn in light of this Court's recent holding in *Matamoros v. Broward Sheriff's Office*, 2 F.4th 1329 (11th Cir. 2021).

Finally, despite the District Court's responsibilities under Rule 56 as set forth in *Tolan v. Cotton*, 134 S.Ct. 1861 (2014), the District Judge proceeded to weigh evidence and overlooked its mandate to resolve all inferences and conflicts in the evidence in favor of the non-moving party.

---

[2] Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601–2654 (2006)

# ARGUMENT

## I.

### *The District Court misapplied the FMLA*

The FMLA requires employers to provide eligible employees with several types of notice of their rights under the Act. Two types of notices are relevant in this case. The first is "eligibility" notice under 29 C.F.R. § 825.300(b)(1), which requires that "[w]hen an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances." The second type is "rights and responsibilities" notice under 29 C.F.R. § 825.300(c), which must be provided at the same time as the eligibility notice. This notice must inform the employee, among other things, (1) "[t]hat the leave may be designated and counted *30 against the employee's annual FMLA leave entitlement ... and the applicable 12-month period for FMLA entitlement," (2) "the employee's right to substitute paid leave ...," and (3) "the employee's rights to maintenance of benefits during the FMLA leave and restoration to the same or equivalent job upon return from FMLA leave." 29 C.F.R. § 825.300(c)(i), (iii), and (vi). Under 29 C.F.R. § 825.300(e), "[f]ailure to follow the notice requirements ... may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights."

An employee whose parent is suffering from a serious health condition must give her employer notice of her need for FMLA leave and, therefore, can state an interference claim only if she gave sufficient notice. *White* 789 F.3d at 1195. Notice of the need for FMLA leave must satisfy two criteria's - timing and content.

With regard to timing, where the need for leave is unforeseeable, as is the case here, the employee must give notice as soon as practicable. See 29 C.F.R. § 825.303(a). With regard to content, "[a]n employee shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request. Depending on the situation, such information may include that a condition renders the employee unable to perform the functions of the job ...." 29 C.F.R. § 825.303(b). Moreover, "[w]hen an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA." Id.

The record facts of this case demonstrate that Ms. Graves provided Brandstar with timely and sufficient notice of her need for FMLA leave. She sent an e-mail entitled "Family Emergency" on May 2, 2018, to Jennifer Giordano, Arash Farsi, Cindy Roussin, and Aharon Bettan, her immediate supervisor. It read:

> Hi guys, I'm planning to fly out to sec my dad in PA tomorrow morning. My dad in ICU. I will not be available for calls/edits. Thank you in advance for making any adjustments to my schedule.
> {Doc. 22-2, pg. 47}

Four days later, on May 6, 2018, Graves e-mailed the CEO Mark Alfieri

reporting on her emergency trip to see her father who had undergone emergency brain surgery. In that email Graves revealed her plan to bring her father to South Florida and her need to provide continuous care {Doc 22-2, Tab 37}.

Thus, the record facts demonstrate that Appellant provided timely and sufficient notice of her need for FMLA leave and notice of her rights.

As stated above, the "eligibility" notice and "rights and responsibilities" notice required under 29 C.F.R. § 825.300(b) and (c) must be provided to the employee "within five business days, absent extenuating circumstances." No such notice was ever provided.

The District Court further overlooked this Court's recent opinion in *Ramji v. Hosp. Housekeeping Sys., LLC*, 992 F.3d 1233 (11th Cir. 2021) wherein you held in a published opinion:

> When an employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, that triggers the employer's obligation to evaluate whether the employee's requested absence in fact qualifies for FMLA protection. See Cruz v. Publix Super Mkts., Inc., 428 F.3d 1379, 1383 (11th Cir. 2005). The employer must also provide notice to the employee of her eligibility for and rights under the FMLA within a certain timeframe. See 29 C.F.R. § 825.300. A "[f]ailure to follow the notice requirements ... may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights." Id. § 825.300(e).
>
> *Ramji v. Hosp. Housekeeping Sys., LLC*, 992 F.3d 1233, 1243 (11th Cir. 2021)

Shockingly, *Ramji*, id, was decided after the motion for summary judgment was submitted. Upon its rendition, Appellant sought and obtained, over objection leave, to submit supplemental authority.  However, despite the parallels to the case under review, the District Judge never addressed this controlling authority concluding:

> Here, the need was foreseeable. All parties involved were aware of Plaintiff's father's illness. It is uncontroverted that Plaintiff failed to make any request for FMLA, either formally through Human Resources as required by the Defendant's Associate Handbook (DE [22-2]) or informally through communications with her supervisors about her schedule. Plaintiff's request to work on Designing Spaces and to be excused from work-related travel was not a request for FMLA leave. Additionally, Plaintiff fails to sufficiently allege that any such request was denied. To the contrary, Plaintiff admits that on numerous occasions Defendant accommodated her schedule even when unrelated to her father's illness. Instead, Plaintiff alleges Defendant failed to advise Plaintiff of her rights under FMLA. This is directly contradicted by the evidence on record, the signed Acknowledgement of Receipt of Associate Handbook and Acknowledgement of Receipt of the Safety and Health Policy, dated January 12, 2017, the day after Plaintiff was hired. Defendant's Associate Handbook (DE [22-2]) requires employees to complete two forms provided by Human Resources when the employee requests FMLA leave, which must be completed within fifteen calendar days. These facts, when viewed in the light most favorable to Plaintiff, indicate Plaintiff did not provide the requisite notice to Defendant of her need for FMLA leave.
> {Doc 44, pg. 12}

The conclusion that the need for leave was foreseeable is further undercut by another recently published opinion:

> Ms. Munoz says her need for leave was unforeseeable because she

17

suffers from "a chronic health condition causing flareups." Appellant's Br. at 24. Because her flareups were unforeseeable, she says, she did not need to notify Selig of the timing or duration of her leave. She is right. Our Court has recognized that employees with health conditions who experience a sudden, acute flareup can demonstrate an unforeseeable need for FMLA leave. See, e.g., White, 789 F.3d at 1196–97 (holding an employee with a preexisting knee injury had an unforeseeable need for leave when the knee suddenly gave out and required surgery); Strickland v. Water Works & Sewer Bd. of Birmingham, 239 F.3d 1199, 1209 (11th Cir. 2001) (holding that an employee with diabetes had an unforeseeable need for leave when he "suffer[ed] a debilitating diabetic attack"). Ms. Munoz introduced evidence her endometriosis and uterine fibroids sometimes caused pain so severe she couldn't move. She also testified she told both Mr. Saine and Mr. Walker of her diagnoses, need for medical treatment, and need for occasional leave to be tardy or absent. The record shows she emailed Mr. Saine and Mr. Walker on specific days she would be absent or late to work because of health issues. Like the plaintiffs in White and Strickland, Ms. Munoz had an unforeseeable need for FMLA leave. Her actions therefore sufficiently notified Selig of her need for FMLA leave, and her conduct was protected under the FMLA.

*Munoz v. Selig Enterprises, Inc.,* 981 F.3d 1265, 1276–77 (11th Cir. 2020)

Because her father's emergency operation for a brain tumor was

unforeseeable and because the undisputed evidence was that Appellant was never

given her notices of "eligibility" and "rights and responsibilities", summary

judgment as to the FMLA was in error.

As stated, Appellant filed a Declaration Under Penalty of Perjury describing

her communications with her employer which clearly constituted a FMLA qualifying

event. In it she declared:

10.Obviously if my father were physically present in my house I would be providing future and perhaps more extensive caregiving. Indeed when he did move in I was even more involved with his care.

11. I was never informed by anyone at Brandstar that I was eligible for FMLA to care for my father remotely or in-person.

{Doc. 25-5, pg. 2}

Appellant's Declaration was entitled to be accepted as true and all inferences should have been resolved against Appellee and in favor of Appellant. That is not what happened. Instead, the District Court opined:

> Here, the need was foreseeable. All parties involved were aware of Plaintiff's father's illness. It is uncontroverted that Plaintiff failed to make any request for FMLA, either formally through Human Resources as required by the Defendant's Associate Handbook (DE [22-2]) or informally through communications with her supervisors about her schedule. Plaintiff's request to work on Designing Spaces and to be excused from work-related travel was not a request for FMLA leave. Additionally, Plaintiff fails to sufficiently allege that any such request was denied. To the contrary, Plaintiff admits that on numerous occasions Defendant accommodated her schedule even when unrelated to her father's illness. Instead, Plaintiff alleges Defendant failed to advise Plaintiff of her rights under FMLA. This is directly contradicted by the evidence on record, the signed Acknowledgement of Receipt of Associate Handbook and Acknowledgement of Receipt of the Safety and Health Policy, dated January 12, 2017, the day after Plaintiff was hired. Defendant's Associate Handbook (DE [22-2]) requires employees to complete two forms provided by Human Resources when the employee requests FMLA leave, which must be completed within fifteen calendar days. These facts, when viewed in the light most favorable to Plaintiff, indicate Plaintiff did not provide the requisite notice to Defendant of her need for FMLA leave.
> {Doc. 44, pg. 12}

Applying the logic of the District Court's order to the *Munoz* case, that

19

Plaintiff would never be entitled to relief for FMLA interference since "all parties were aware of [her] illness". The District Judge essentially adopted a standard which requires thirty days' notice of any onset of related illness, no matter how sudden, how acute, or how severe. This construction judicially rewrites the FMLA statute and regulations. As Judge Lazzara of the Middle District noted:

> The regulations differentiate between foreseeable and unforeseeable serious medical conditions, with a foreseeable condition involving planned medical treatment. *Crawford v. City of Tampa*, 8:08-CV-927-T-26EAJ, 2011 WL 940305, at *3 (M.D. Fla. Mar. 17, 2011), aff'd, 464 Fed. Appx. 856 (11th Cir. 2012)

## II.

### *The District Court erred in the consideration of the ADA claim*

The District Court erroneously concluded that the fact that the Appellant's terminally ill father resided in Pennsylvania precluded her from presenting a prima facie of disability discrimination. That was error as was the alternative holding that she had not established her burden under *McDonnell Douglas v. Green* to show that the preferred explanation that she was fired for reasons unrelated to her father's disability.

> The ADA also defines the term "discriminate" to include, among other factors, "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). In order to establish a prima facie case under this "association discrimination" theory, Hilburn must establish the following elements: (1) she was subjected to an adverse

> employment action, (2) she was qualified for the job at that time, (3)
> she was known by Murata at the time to have a relative with a disability,
> and (4) the adverse employment action occurred under circumstances
> which raised a reasonable inference that the disability of the relative
> was a determining factor in Murata's decision. *Hartog v. Wasatch Academy,* 129 F.3d 1076, 1085 (10th Cir.1997).

> *Hilburn v. Murata Elecs. N. Am., Inc.,* 181 F.3d 1220, 1230–31 (11th
> Cir. 1999)

Neither the statute nor any decisional law has ever required that a caregiver

be physically present with her parent. As can be seen from *Hilburn,* it is simply not

a factor.

Even though her father was over a thousand miles away, Graves recounted in

her Declaration her daily responsibilities for care of her father from afar:

> 6. I was his primary caregiver, although like many caregivers in today's pandemic world I had to function remotely.
> 7. On any given day, I would speak to my father several times a day providing
> emotional support, speak with home health aides about issues or concerns that
> would arise on a daily basis, speak with doctors' offices to make appointments
> or go over clinical findings. Thus I would spend at least three hours per day
> on caring for my father, while being a mother for two children.
> {Doc. 25-2, pg. 2}

The alternative McDonnell Douglas holding is also in error. As this Court has

held:

> However, establishing the elements of the McDonnell Douglas framework is not, and never was intended to be, the sine qua non for a plaintiff to survive a summary judgment motion in an employment discrimination case. **...** See *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th
> Cir.1997) (declaring that, in cases where a plaintiff cannot establish a
> prima facie case, summary judgment only will be "appropriate where
> no other evidence of discrimination is present." (citations omitted));

Silverman v. Bd. of Educ., 637 F.3d 729, 733 (7th Cir.2011) ("To avoid summary judgment ... the plaintiff must produce sufficient evidence, either direct or circumstantial, to create a triable question of intentional discrimination in the employer's decision."). A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents "a convincing mosaic of circumstantial evidence that would allow a jury to infer[25] intentional discrimination by the decisionmaker." Silverman, 637 F.3d at 734 (citations and internal quotation marks omitted); see also *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 157 (2d Cir.2000) ("[T]he way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove—particularly discrimination.").

*Smith v. Lockheed-Martin Corp*., 644 F.3d 1321, 1328 (11th Cir 2011)

As this brief has shown, in her May 6th email to the CEO, Appellant announced her plans to move her father to South Florida. Her termination followed twenty-three days later, a period in the context of retaliation would be called "temporal proximity." That same proximity, which is good enough to infer causation, likewise infers discriminatory animus and the jury should have been allowed to determine this issue.

## III.

### *The District Court impermissibly weighed evidence*

The District Court acknowledged within the order granting summary judgment, the rules of decision governing Rule 56 motions {Doc. 44, pg. 5-6} However, despite the recitation of these standards and specifically of *Tolan v. Cotton*, 134 S.Ct. 1861 (2014), throughout the order granting summary judgment, the

District Court below construed inferences derived from facts in favor of Appellee

and against Appellant.

For instance, rather than accepting Appellant's sworn declaration that "I was

never informed by anyone at Brandstar that I was eligible for FMLA to care for my

father remotely or in-person" {Doc. 25-5, pg. 2} the District Court stated:

> Instead, Plaintiff alleges Defendant failed to advise Plaintiff of her rights
> under FMLA. This is directly contradicted by the evidence on record, the
> signed Acknowledgement of Receipt of Associate Handbook and
> Acknowledgement of Receipt of the Safety and Health Policy, dated January
> 12, 2017, the day after Plaintiff was hired. Defendant's Associate Handbook
> (DE [22-2]) requires employees to complete two forms provided by Human
> Resources when the employee requests FMLA leave, which must be
> completed within fifteen calendar days. (Doc 44, pg 4)

Likewise, the trial court somewhat sarcastically discredited the Plaintiff's

evidence that she had traveled to attend to her father's emergency surgery and had

attempted to claim PTO time for the two days she was out:

> During this visit, Plaintiff claims she did not work on May 3 or 4, 2018,
> however, she "accidentally" clocked in on those days because she had
> problems using the timekeeping application on her phone. Plaintiff did not
> correct her error until May 14, 2018, when Bettan instructed her to submit
> her time for May 3 and 4 as paid time off ("PTO").[3]
> {Doc 44, pg. 4}

In the impermissible weighing of the evidence, the District Judge contradicted

the mandate of *Tolan v. Cotton*:

> Considered together, these facts lead to the inescapable conclusion that the

---

[3] This discrediting of Graves' evidence was essentially uninvited as the defendant
below had never suggested that Graves had not traveled to Pennsylvania.

court below credited the evidence of the party seeking summary judgment and failed properly to acknowledge key evidence offered by the party opposing that motion…

The witnesses on both sides come to this case with their own perceptions, recollections, and even potential biases. It is in part for that reason that genuine disputes are generally resolved by juries in our adversarial system. By weighing the evidence and reaching factual inferences contrary to Tolan's competent evidence, the court below neglected to adhere to the fundamental principle that at the summary judgment stage, reasonable inferences should be drawn in favor of the nonmoving party.

*Tolan v. Cotton*, 572 U.S. 650, 659–60 (2014)

## CONCLUSION

This Court should reverse the District Court with instructions to set this case for jury trial.

**DATED DECEMBER 13, 2021**

BY: *G. Ware Cornell, Jr.*
G. Ware Cornell, Jr.
Fla. Bar No. 203920
ware@warecornell.com
**CORNELL & ASSOCIATES, P.A.**
Counsel for Appellant
2645 Executive Park Drive
Weston, Fla. 33331
Tel: (954) 618-1041

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)

(7)(B) because this brief contains 4416 words, excluding the parts of the brief

exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  This brief complies with the type

face requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of

Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally

spaced typeface with Times New Roman 14-point font.

## CERTIFICATE OF SERVICE

I certify that on December 13, 2021, I served a copy of this brief via Federal

Express Next Day to the Clerk of this Court and to counsel for the Appellee,

*/s/ G. Ware Cornell, Jr.*
G. Ware Cornell, Jr.
Fla. Bar No. 203920
ware@warecornell.com
**CORNELL & ASSOCIATES, P.A.**
Counsel for Appellant
2645 Executive Park Drive
Weston, Fla. 33331
Tel: (954) 618-1041